Case: 6:04-cv-00419-GWU Doc #: 20 Filed: 07/06/05 Page: 1 of 7 - Page ID#: 88
Eastern District of Kentucky
FILED
JUL 06 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-419-GWU

LARRY GIBSON,            PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,      DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Gibson v. Barnhart, London Civil Action No. 01-240 (E.D. Ky.) to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). After a period of administrative reconsideration prompted by the undersigned's Memorandum Opinion, Order and Judgment of June 14, 2002 (Tr. 225-232), another negative administrative decision was issued (Tr. 237-245). The appeal has been redocketed under the current civil action number and is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind

1

Gibson

shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human

2

Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is

3

Gibson

significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The undersigned had remanded the case for further consideration, essentially noting that the residual functional capacity findings of the agency's 2001 decision were not consistent with the assessment of the only physician who had produced a residual functional capacity assessment during the critical period between February, 1998 (the date of the unappealed negative final agency decision on a prior benefits application) and the December, 2001 Date Last Insured. (Tr. 231-232). This physician, Raju Vora, identified himself as having treated the patient from February, 1987 "to present" (Tr. 163) and had opined that Gibson could lift no more than 10 pounds, had problems performing functions with his hands, could

4

Gibson

walk only one city block, and was limited in bending, squatting, and kneeling (Tr. 164). Among the conditions noted as the cause of these limitations were arthritis (Tr. 163) and back pain (Tr. 165), and the old record revealed that Raju had received a report from a neurosurgeon to whom he had referred the patient (Tr. 159) indicating that the plaintiff suffered from various musculoskeletal strains, sprains, and spasm (Tr. 160). Thus, the Court found that Vora's opinion could not be seen as totally gratuitous and, "at a minimum, the ALJ should have obtained an opinion for a medical expert to provide a professional rationale to *discount Vora's opinion*." (Tr. 262).

Upon remand, no consultative examination was performed, thus leaving Vora's assessment as the only one from an examiner for the period. Moreover, additional information from Vora makes it clear that he had seen the patient and prescribed Celebrex (an arthritis medication) as well as other medications during the critical period, which discounts the agency's own argument that Vora was not a treating physician, or was not a treating physician for musculoskeletal problems.[1]

---

[1] The new record also shows that Vora obtained lumbar x-rays some nine months after the critical period and that evidence of mild diffuse degenerative changes were found. (Tr. 297). If the agency takes issue with the fact that not all of Vora's progress notesfor the period prior to August, 2001 were submitted to the agency, some clarification might have been sought first by the agency due to the physician's ambiguous comment on his assessment form that "copies of records . . . [were] sent out on 1-12-01," the date of the assessment itself. (Tr. 165). This might be interpreted as implying that the physician had erroneously believed that other exhibits from his office had been sent to the agency that same date. See 20 C.F.R. Section 404-1512(e).

5

Gibson

The services of a medical expert were sought in response to the Court's direction, but only minimally so. The medical expert was not present to testify, and in his written commentary did not make one specific reference to Vora's assessment, did not mention the physical findings of the neurosurgeon and, although he opined in general that the medical evidence did not support all of the allegations (Tr. 288), did not explain why he felt so. While the opinion of a non-examining expert may be accepted over that of an examiner, the non-examiner must have had the benefit of the review of the entire record and *clearly stated the reason that his opinion differed from that of the examiner.* Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (emphasis added). The expert also did not have access to the more recent information submitted from Vora, which included references to the physician's having prescribed Celebrex (an arthritis medication) during the critical period. Nevertheless, the administrative law judge (ALJ) sought to rely on the medical expert's residual functional capacity over that of Vora.

Another problem remains as well. The ALJ indicates that his current residual functional capacity findings were in compliance with Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) (Tr. 217).[2] The medical expert had not cited any evidence or findings from the pre-1998 period to provide a basis for

---

[2] The Drummond issue was a factor alluded to but the case had not been specifically cited in the undersigned's former opinion.

Gibson

"medical improvement," nor was there any indication from any other physician within the critical period actively stating that medical improvement existed. The ALJ argues, rather, that the findings contained in the prior 1998 final agency decision indicating that the plaintiff was restricted to a limited range of "sedentary" level work would have accommodated the light level jobs identified by his own vocational expert, and thus, his findings complied with Drummond because the two findings were not materially different. Assuming that the ALJ's interpretation is correct, that fact still is impossible to tell from the record provided to the undersigned. None of the prior medical exhibits themselves were in the present record and it is not possible to discern with 100 percent certainty where the 1998 ALJ got his "exertional demands of a modified version of sedentary work" (Tr. 36) from; while it may well be that the past ALJ had "approximated" that statement of a Dr. Bushey (Tr. 34) and assumed that this would be sedentary work (Tr. 321), this fact could be made more clear to a reviewing source.

The case will be remanded for further consideration.

This the  6  day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE

7